**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS**

**JODI LYNN COONTZ HUCKS**,

       Plaintiff,

v.                              **Civil Action No. 2:12-CV-76
                                   (BAILEY)**

**CAROLYN W. COLVIN,**
***Acting Commissioner of Social Security***,

       Defendant.

<u>**ORDER ADOPTING REPORT AND RECOMMENDATION**</u>

On this day, the above-styled matter came before this Court for consideration of the Report and Recommendation ("R&R") of United States Magistrate Judge James E. Seibert [Doc. 15] and the plaintiff's Objections thereto [Doc. 16]. Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, failure to file objections permits the district court to review the R&R under the standards that the district court believes are appropriate, and under these circumstances, the parties' right to *de novo* review is waived. *See* ***Webb v. Califano,*** 468 F.Supp. 825 (E.D. Cal. 1979). Accordingly, this Court will conduct a *de novo* review only as to those portions of the R&R to which the plaintiff objected. The remaining portions of the R&R will be reviewed for clear error. As a result, it is the opinion of this Court that the R&R should be **ADOPTED**.

**I. Background**

On December 14, 2009, the plaintiff filed a disability claim and her first supplemental security income ("SSI") [Doc. 1 at 2; R.8], alleging that she became disabled on or about

1

April 30, 2005 [R. 8]. This initial claim was denied on April 7, 2010, and again upon reconsideration on May 18, 2010 [*Id.*]. On June 18, 2010, the plaintiff requested a hearing [*Id.*]. A hearing was held on September 9, 2011, before Administrative Law Judge ("ALJ") Jeffrey P. La Vicka [R. 19; R. 21-41]. On October 3, 2011, ALJ La Vicka rendered an unfavorable ruling [Doc. 1 at 2; R. 5-18]. The ALJ determined that the plaintiff had the following severe combination of impairments: degenerative disc disease of the lumbar and cervical spine, status post diskectomy and fusion of both the lumbar and cervical spine and traumatic arthritis of the right knee [R. 10]. However, ALJ La Vicka found that these impairments or combination of impairments do not "meet[ ] or medically equal[ ] one of the listed impairments in 20 CFR Part 404, Subpart A, Appendix 1 . . ." [R. 10-11]. Although he found that the plaintiff could no longer perform her past work, which was classified at the "'heavy' exertional level" [R. 16], ALJ La Vicka determined that the plaintiff had the residual functional capacity to perform a range of light work activity with certain limitations [R. 11-16].[1] Accordingly, the ALJ ruled that the plaintiff was not disabled [R. 17-18]. The plaintiff filed a request for review of the ALJ's decision with the Appeals Council on October 18, 2011 [R. 4]. The Appeals Council denied the request for review on September 20, 2012 [Doc. 1 at 2; R. 1-3].

---

[1]In particular, the ALJ found that the plaintiff is able to "perform only a range of work activity that: requires no more than a 'light' level of physical exertion as defined in 20 CFR 416.967(b); affords the claimant the ability to briefly, for 1 to 2 minutes, alternate sitting or standing positions at thirty (30) minute intervals throughout the day; requires no foot control bilaterally; requires no climbing of ladders, ropes, and/or scaffolds; requires no more than occasional performance of other postural activities such as balancing, climbing ramps or stairs, stooping, kneeling, crouching and/or crawling; entails no concentrated exposure to extreme cold and heat; and avoids all exposure to workplace hazards such as machinery, unprotected heights, and commercial driving" [R. 11].

On November 14, 2012, the plaintiff filed a complaint [Doc. 1] seeking judicial review of the October 3, 2011, adverse decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Pursuant to the Local Rules, this case was referred to Magistrate Judge Seibert for a recommended disposition. On February 26, 2013, and March 14, 2013, the plaintiff and the defendant filed their respective motions for summary judgment [Docs. 10 & 12]. In the complaint and memorandum of law in support of her motion for summary judgment, the plaintiff states that the ALJ's decision should be reversed because it is "neither supported by substantial evidence nor based upon a correct application of the law" [Doc. 1 at 2].

First, the plaintiff asserts that she did not receive a fair hearing because she was unrepresented at the hearing and the ALJ did not fully develop the record [Doc. 11 at 1-5; 10-12]. Next, the plaintiff argues that the ALJ improperly discredited treating source evidence [*Id.* at 5-9]. Finally, the plaintiff claims that the residual functional capacity conclusion was inconsistent with the overall medical records [*Id.* at 12-15]. In the brief in support of its motion for summary judgment, the defendant responds to each claim and argues that the ALJ's decision is supported by substantial evidence [Doc. 13].

On April 3, 2013, Magistrate Judge Seibert entered his R&R in which he concludes that the ALJ fully developed the case and properly performed the heightened duty required when the claimant is unrepresented [Doc. 15 at 18]. In addition, the magistrate judge concludes that the ALJ's decision denying the plaintiff's application for disability and supplemental security income is supported by substantial evidence [*Id.* at 18-19]. As such, the magistrate judge recommends that the plaintiff's motion for summary judgment be denied and the defendant's motion for summary judgment be granted [*Id.* at 19]. On April 12, 2013, the plaintiff filed timely objections [Doc. 16] to the conclusions in the magistrate

judge's report and recommendation. The defendant filed a response thereto on April 18, 2013 [Doc. 17].

## II. Applicable Legal Standards

### A. Judicial Review of an ALJ Decision

Judicial review of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied. *See* 42 U.S.C. § 405(g). "The findings . . . as to any fact, if supported by substantial evidence, shall be conclusive." *Richardson v. Perales*, 402 U.S. 389, 390 (1971); and *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The phrase "'supported by substantial evidence'" means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *See Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "consists of more than a mere scintilla of evidence[,] but may be somewhat less than a preponderance . . .." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Thus, "[i]t is not within the province of a reviewing court to determine the weight of the evidence; nor is it [the court's] function to substitute [its] judgment . . . if [the] decision is supported by substantial evidence." *Id.* (*citing Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962)). Ultimately, it is the duty of the ALJ reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence. *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). "This Court does not find facts or try the case *de novo* when reviewing disability determinations." *Id.*; *see also Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976); and *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

## B. Five-Step Evaluation Process

To determine whether a claimant is disabled, the ALJ considers the following five-step evaluation process:

Step One:     Determine whether the claimant is engaging in substantial gainful activity;

Step Two:     Determine whether the claimant has a severe impairment;

Step Three:   Determine whether the claimant has a listed impairment (20 C.F.R. Part 404, Subpart P, Appendix 1) and conduct a Residual Functional Capacity ("RFC") assessment;

Step Four:    Consider the RFC assessment to determine whether the claimant can perform past relevant work; and

Step Five:    Consider the RFC assessment, age, education, and work experience to determine whether the claimant can perform any other work.

*See* 20 C.F.R. § 404.1520(a)(4) (2011).

Once the claimant satisfies Steps One and Two, he/she will automatically be found disabled if he/she suffers from a listed impairment and meets the duration requirement. ***Rhoderick v. Heckler***, 737 F.2d 714, 715 (7th Cir. 1984); 20 C.F.R. § 404.1509. If the claimant does not have listed impairments but cannot perform his/her past work, the burden shifts to the Commissioner to show that the claimant can perform some other job. ***Rhoderick***, 737 F.2d at 715.

## III. Discussion

At Step One, the ALJ determined that the plaintiff had not engaged in substantial gainful activity since April 30, 2005 [R. 10]. At Step Two, the ALJ held that the plaintiff had the following severe impairments: "degenerative disc disease of the lumbar and cervical

5

spine, status post diskectomy and fusion of both the lumbar and cervical spine and traumatic arthritis of the right knee" [*Id.*].  At Step Three, the ALJ found that the plaintiff did not meet a listing impairment [R. 10-11] and has the RFC to perform light work with certain limitations [R. 11-16].  At Step Four, the ALJ determined that the plaintiff is unable to perform past relevant work [R. 16].  At Step Five, the ALJ ruled that the "there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform . . ." [R. 16-17].

In his R&R, the magistrate judge recommends that this Court affirm the ALJ's decision [Doc. 15].  On April 12, 2013, the plaintiff filed timely objections [Doc. 16], taking issue with the conclusions of the magistrate judge; the defendant filed a response to the plaintiff's objections [Doc. 17] on April 18, 2013.  This Court will address the objections as they relate to each of the plaintiff's claims of error discussed above.  In so doing, the Court will determine, *de novo*, whether any claim of error necessitates a finding that the ALJ's decision is not supported by substantial evidence.

## A.  Development of the Record

The plaintiff argues in her Motion for Summary Judgment that her hearing was improperly adversarial in nature given the fact that she was unrepresented at the hearing and the ALJ failed to fully develop the record [Doc. 11 at 1-2].  The plaintiff further contends her due process rights were violated based upon this prejudicial hearing [*Id.* at 5].  The plaintiff asserts that the ALJ failed to develop the record in a number of ways: (1) asking leading questions and failing to elicit supporting testimony [*Id.*], (2) failing to develop discrepancies in the medical evidence [*Id.* at 1, 2-4], (3) improperly examining the plaintiff's daily activities [*Id.* at 4-5], and (4) ignoring the development of mental health evidence [*Id.*

6

at 10-12]. In the R&R, the magistrate judge concludes that the ALJ conducted a full and fair hearing and properly developed the record [Doc. 15]. As discussed in more detail below, the plaintiff objects to the magistrate judge's conclusion with respect to some of her arguments as to how the ALJ allegedly failed to fully develop the record [Doc. 16].

An ALJ has a heightened duty to ensure that a *pro se* claimant receives a full and fair hearing. ***Stahl v. Comm'r of Soc. Sec. Admin.***, 2008 WL 2565895, *5 (N.D.W.Va. June 26, 2008) (citing ***Sims v. Harris***, 631 F.2d 26, 27 (4th Cir. 1980)). The ALJ has the duty to "explore all relevant facts and inquire into the issues necessary for adequate development of the record." ***Cook v. Heckler***, 783 F.2d 1168, 1173 (4th Cir. 1986) (internal citations omitted). However, the ALJ is not obligated to act as substitute counsel for the *pro se* claimant; the ALJ must merely "develop a reasonably complete record." ***Clark v. Shalala***, 28 F.3d 828, 830-31 (8th Cir. 1994) (cited with approval by ***Rice v. Charter***, 1995 WL 253134, *2 (4th Cir. May 1, 1995) and ***Bell v. Charter***, 1995 WL 347142, *4 (4th Cir. June 9, 1995)). The lack of representation is not enough to warrant remand where the claimant knowingly waived the right to counsel;[2] the claimant must demonstrate that "the absence of counsel 'created clear prejudice or unfairness to the claimant'" ***Stahl***, 2008 WL 2565895 at *5 (quoting ***Sims***, 631 F.2d at 28). An unfavorable ruling is not sufficient to establish prejudice to the claimant. *See **Evangelista v. Sec'y of***

---

[2]This Court notes that the plaintiff does not allege that she did not make a knowing waiver of her right to counsel [*See* Docs. 11 and 16]. In fact, the transcript of the September 9, 2011, hearing demonstrates that the ALJ discussed with the plaintiff her right to counsel before proceeding with the hearing [R. 24-25]. As such, to the extent that the plaintiff's claim that she was prejudiced rests merely on the fact that she was not represented by counsel, this Court finds the plaintiff's argument without merit.

*Health and Human Servs.*, 826 F.2d 136, *143 (1st Cir. 1987).

## 1. Seeking Surgical Medical Records

In her Motion for Summary Judgment, the plaintiff argues that the ALJ failed to properly develop the record in part because he failed to seek medical records with respect to a back surgery that she had in the early 1990s and a neck surgery that she had in 2005 [Doc. 11 at 3-4]. In his R&R, the magistrate judge noted that the plaintiff stated at the hearing that some of those records were destroyed and could not be obtained [Doc. 15 at 13]. In addition, the magistrate judge concluded that there was no prejudice to the plaintiff because the ALJ accepted the "reported history and the references to [the surgeries] throughout the claimant's medical records as true and accurate reflection of her alleged conditions" and incorporated impairments associated with these surgeries into limitations in the RFC [*Id.* at 13-14, quoting the ALJ's written decision]. In her Objections, the plaintiff makes no objection to the magistrate judge's conclusion on this issue; as such, this portion of the R&R is subject to review for clear error.

As noted by the magistrate judge, the ALJ's written decision incorporated the information relating to the plaintiff's back and neck surgeries; as such, the lack of records on these surgeries did not prejudice the plaintiff. *See **Smith v. Schweiker***, 677 F.2d 826, 830 (11th Cir. 1982) (noting that a reviewing court must determine "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice'" when evaluating whether the ALJ properly developed the record); *see also **Bell***, 1995 WL 347142 at *5 ("The ALJ had before him sufficient facts to determine the central issue of disability, and [the claimant] failed to indicate how these unidentified reports would have impacted the

ALJ's assessment. Therefore, any failure on the part of the ALJ to ferret out additional information did not constitute reversible error."). Accordingly, this Court agrees with the magistrate judge's conclusion that the plaintiff's argument on this issue is without merit.

## 2. Eliciting Testimony at the Hearing

In her Motion for Summary Judgment, the plaintiff argues that the ALJ did not properly develop the record in part because he asked leading questions to elicit unfavorable testimony and failed to elicit favorable testimony [Doc. 11 at 4-5]. In particular, the plaintiff argues that the ALJ should have inquired further into her daily activities regarding the assistance the she provides to her mother, particularly with regard to the physical and emotional demands that such assistance places on the plaintiff [Doc. 16 at 2-7].

This Court will first address the portion of the plaintiff's argument that pertains to the claim that the ALJ failed to elicit favorable testimony during his questioning of the plaintiff. The transcript demonstrates that the ALJ inquired about the plaintiff's educational background, ability to read and write, personal life, ability to drive, daily activities, work history, medical history, and the current use of any prescription medications [R. 26-36]. When the ALJ asked the plaintiff why she is unable to work, she replied that she is the primary caretaker for her 79-year-old mother and she cannot have a job that requires standing [R. 30]. Later in the plaintiff's testimony, the ALJ asked the plaintiff about medical conditions, physical or mental, that interfere with her ability to work [R. 33]. The plaintiff provided a number of conditions that she believed interfere with her ability to work [R. 33-34]. After the plaintiff noted each individual medical condition, the ALJ continued to ask her if there was anything else [*Id.*] until she finally stated that she could not think of any other

conditions [R. 34]. At the conclusion of the plaintiff's testimony, the ALJ informed her that he was about to hear testimony from a vocational expert and gave her an opportunity to provide any additional information that she thought he should know [R. 36].[3] The plaintiff stated that she could not think of anything to add to her testimony [*Id.*].

Based upon a review of the transcript of the plaintiff's testimony and the ALJ's questions, this Court finds that the ALJ provided the plaintiff with a full and fair hearing and developed a reasonably complete record. *See **Sims***, 631 F.2d at 27; ***Clark***, 28 F.3d at 830-31 (cited with approval by ***Rice***, 1995 WL 253134 at *2 and ***Bell***, 1995 WL 347142 at *4). Furthermore, the ALJ is not required to act as substitute counsel for the claimant. *See* ***id.*** Although the plaintiff argues that the ALJ should have followed up on the daily activities issue by specifically asking what physical and emotional demands were included in being the primary caregiver to her elderly mother, the plaintiff does not explain how asking these questions would have led to a favorable ruling. Furthermore, the plaintiff was provided an opportunity to provide any additional information that she felt was relevant at the end of her testimony; however, she said that she could not think of anything else. In addition, the plaintiff does not claim that the outcome would have been any different had she been represented at the hearing. As such, even if the ALJ erred by not asking these questions, the plaintiff has not demonstrated any prejudice.[4] Accordingly, this Court hereby

_____

[3]The ALJ specifically said the following to the plaintiff: "Is there anything else you want to tell me you think I should know? I mean I'm about to ask the vocational specialist some questions about some jobs that might be available to you. Is there anything else you think I should know before I proceed with that?" [R. 36].

[4]*See **Kane v. Heckler***, 731 F.2d 1216, 1220 (5th Cir. 1984) (stating that, in a failure to develop the record claim, a claimant must establish that prejudice occurred by demonstrating that the claimant "could and would have adduced evidence that might have

**OVERRULES** the plaintiff's objection regarding the claim that the ALJ failed to elicit favorable testimony from the plaintiff during her testimony at the September 9, 2011, hearing.

Next, the plaintiff argues that the ALJ improperly elicited unfavorable testimony from her and relied on the fact that she is the primary caregiver for her mother as the sole basis for his credibility determination[5] and disability decision. However, the ALJ's decision demonstrates that the ALJ considered a number of items on reaching each of those determinations. In his decision, the ALJ noted the various physical ailments and pain to which the plaintiff testified; however, the ALJ made a credibility decision that "the claimant's subjective statements concerning the intensity, persistence and limiting effects of those symptoms are not credible to the extent that they are inconsistent with [the RFC] assessment and the objective medical evidence" [R. 11-12; *see also* R. 15-16]. In reaching

---

altered the result"). The plaintiff has provided no explanation as to the emotional and physical demands to which she would have testified that would have led to a favorable ruling.

[5]This Court notes that the plaintiff does not object to the magistrate judge's conclusion that the plaintiff's argument regarding her subjective complaints have an inherent trustworthiness pursuant to Rule 803 of the Federal Rules of Evidence is without merit. As noted by the magistrate judge, the Federal Rules of Evidence do not apply to administrative hearings and it is within the province of the ALJ to weigh the credibility of the claimant. ***Hardisty v. Astrue***, 592 F.3d 1072, 1080 (9th Cir. 2010); ***Hatcher v. Sec'y, Dep't of Health and Human Servs.,*** 898 F.2d 21, 23 (4th Cir. 1989). Moreover, such credibility determinations by the ALJ are given great weight by reviewing courts. ***Shively v. Heckler***, 739 F.2d 987, 989-90 (4th Cir. 1984). As such, this Court finds no clear error with the magistrate judge's conclusion on this issue. Furthermore, this Court agrees with the magistrate judge's conclusion that there is no reason to disturb the credibility determination made by the ALJ [Doc. 15 at 10]. *See* ***Cook v. Astrue***, 2011 WL 719008, *33 (N.D.W.Va. Jan. 28, 2011) (finding that the claimant did not meet his burden to show that the ALJ's credibility determination was "patently wrong" where the ALJ had stated multiple explanations (including objective medical evidence, treatment history, and daily activities) for his conclusion that the claimant was able to work).

this conclusion, the ALJ discussed the medical evidence in great detail and noted items that undermine the plaintiff's subjective complaint [R. 12-15]. In addition, the ALJ noted that the plaintiff "has not described activities of daily living as limited as one would expect given her complaints of physical impairments" [R. 15].[6] Although the ALJ considered the fact that the plaintiff referred to herself as the primary caregiver for her mother, this was not the sole basis for the ALJ's credibility determination or disability determination. As such, this Court hereby **OVERRULES** the plaintiff's Objections to the extent that she argues that the ALJ improperly elicited unfavorable testimony and solely relied upon her role as a primary caregiver to her elderly mother in reaching an unfavorable ruling. Accordingly, this Court hereby **OVERRULES** the plaintiff's Objections regarding the allegation that the ALJ failed to properly develop the record based upon his questioning of the plaintiff at the hearing.

### 3. Seeking Additional Medical Evidence from Belington Community Medical Services

In her Motion for Summary Judgment, the plaintiff argues that the ALJ did not properly develop the record in part because he merely discounted the Belington Community Medical Services records rather than  develop the discrepancies in the medical evidence [Doc. 11 at 5-8]. In his R&R, the magistrate judge treated this argument as two separate arguments: (1) the claim that the ALJ failed to develop the record by not following up with Belington Community Medical Services, and (2) the claim that the ALJ improperly discredited a treating source [*See* Doc. 15 at 15-17]. With regard to the first portion of the argument, the magistrate judge concluded that the ALJ was not required to re-contact this

---

[6]The claimant's daily activities are among the various factors that an ALJ will consider as relevant to the claimant's symptoms. *See* 20 C.F.R. § 404.1529(c)(3).

medical source because the medical evidence from Belington Community Medical Services was not inadequate; it clearly showed that individuals from this medical source concluded on two occasions that the plaintiff could not work for one year [Doc. 15 at 15 (citing *Farnsworth v. Astrue*, 604 F.Supp.2d 828, 834 (N.D.W.Va. 2009) ("An ALJ is required to re-contact medical sources only when the record before the ALJ provides inadequate evidence to determine whether the claimant is disabled."))].  As such, the magistrate judge concluded that the ALJ did not err by failing to obtain additional medical evidence from Belington Community Medical Services and, accordingly, that substantial evidence supported the ALJ's decision [*Id.*].  In her Objections, the plaintiff does not object to the magistrate judge's conclusion on this issue to the extent that it pertains to the claim that the ALJ should have followed up with Belington Community Medical Services [*See* Doc. 16].  Instead, the plaintiff objects to the magistrate judge's conclusion regarding the second portion of her argument, which is addressed in Section III.B. of this Order [*Id.* at 10-13].

Because the plaintiff did not object to the magistrate judge's conclusion regarding the ALJ's failure to obtain additional medical evidence from Belington Community Medical Services, this Court will review this portion of the R&R for clear error.  As noted by the magistrate judge, the medical evidence from Belington Community Medical Services notes a conclusion that the plaintiff would not be able to work for one year on two different occasions [R. 155; R. 194].  As such, the medical evidence from Belington Community Medical Services was not inadequate to determine what its physicians concluded regarding the plaintiff's ability to work; therefore, the ALJ was not required to follow up with Belington Community Medical Services.  Accordingly, this Court agrees with the magistrate judge's conclusion that the ALJ did not err when he did not re-contact Belington Community

13

Medical Services.

### 4. Developing Mental Health Evidence

In her Motion for Summary Judgment, the plaintiff argues that the ALJ did not properly develop the record in part because he did nothing to develop her mental health evidence [Doc. 11 at 10-12]. In his R&R, the magistrate judge concluded that the record contains sufficient evidence for the ALJ to make the decision not to order a consultative examination [Doc. 15 at 14]. In reaching this conclusion, the magistrate judge noted that the plaintiff made no claim of any mental health problem on her application and that a Psychiatric Review Technique completed by G. David Allen, Ph.D., found no medically determinable mental impairments [*Id.* at 14-15; *see also* R. 177]. The plaintiff objects to the magistrate judge's conclusion on this issue, stating that "she received no mental health assessment from a trained psychologist or psychiatrist" [Doc. 16 at 8]. The plaintiff argues that she instead received a "Report of Contact" that was later reviewed by Dr. Allen, which she claims cannot constitute substantial evidence in support of the ALJ's decision to not order a consultative examination [*Id.* at 8-9].

The ALJ has the discretion to order a consultative examination with a mental health expert. *See* 20 C.F.R. § 404.1519a. "Before purchasing a consultative examination, [the ALJ] will consider not only existing medical reports, but also the disability interview form containing [the claimant's] allegations as well as other pertinent evidence in [the claimant's] file." 20 C.F.R. § 404.1519a(a); 20 C.F.R. § 416.919a(a). So long as the decision to not order a consultative examination is supported by substantial evidence, a reviewing court should defer to the ALJ's discretion. ***Keplinger v. Astrue***, 2008 WL 4790663, *5 (W.D.Va.

Nov. 3, 2008) (citing *Wren v. Sullivan*, 925 F.2d 123 (5th Cir. 1991)).

The plaintiff concedes that she did not allege any mental impairments in her application or have a history of mental health problems [Doc. 16 at 9].  *See* 20 C.F.R. § 404.1512(a); 20 C.F.R. § 416.912(a) ("We will consider only impairment(s) you say you have or about which we receive evidence.").  However, the plaintiff argues that there is evidence in the record that demonstrates that she might have a mental impairment [*Id.*]. In particular, the plaintiff cites to the following statements in the Adult Function Report, which she claims demonstrate that she might have a possible mental impairment:  (1) she feels like everyone is laughing at her because of her surgical scar [R. 119]; (2) she does not like to be around people because she feels like everyone is "out to stick it to [her]" [*Id.*]; (3) she does not handle stress well and gets upset easily [R. 120]; (4) she gets nervous with changes in routine [*Id.*]; and (5) she vomits when she is nervous [*Id.*].

As previously noted in Section III.A.2. of this Order, the ALJ determined that the plaintiff's subjective complaints were not credible to the extent that they were not supported by the objective medical evidence.  The evidence regarding the plaintiff's mental health includes the following: (1) a notation by G. David Allen, Ph.D., that the plaintiff makes no claim of mental impairment [R. 189]; (2) a conclusion by G. David Allen, Ph.D., that the plaintiff has no medically determinable impairment based upon a review of the evidence [R. 177], including a Report of Contact completed by Sheila Heston, which notes some of the plaintiff's problems in getting along with other people [R. 142].  As such, substantial evidence[7] supports the ALJ's conclusion to not order a consultative examination.

_____

[7]The plaintiff cites to a United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") decision and a United States Court of Appeals for the Ninth Circuit ("Ninth Circuit")

Furthermore, to the extent that the plaintiff appears to argue that a person-to-person meeting with a trained psychologist or psychiatrist is required before an ALJ can decide that it is not necessary to order a mental health consultative examination, this Court notes that such an argument fails in the face of 20 C.F.R. § 404.1519a, which provides the ALJ with the discretion to determine whether a consultative examination is indeed necessary. Accordingly, this Court hereby **OVERRULES** the plaintiff's Objections on this issue. For these reasons and those more fully stated in the magistrate judge's R&R, this Court finds that ALJ did not commit a reversible error when he did not order a mental health consultative examination of the plaintiff.

As previously noted, this Court finds the following: (1) it was not reversible error for the ALJ to fail to obtain records regarding the plaintiff's back surgery in the 1990s and neck surgery from 2005; (2) the ALJ did not improperly question the plaintiff during her September 9, 2011, hearing or solely rely upon her role as a primary caregiver to her elderly mother in reaching an unfavorable ruling; (3) the ALJ was not required to follow up with Belington Community Medical Services for additional information; and (4) the ALJ did not commit a reversible error when he did not order a mental health consultative

---

decision for the proposition that a "[n]on-examining doctor's opinion 'with nothing more' does not constitute substantial evidence." [Doc. 16 at 9, citing *Smith v. Schweiker*, 795 F.2d 343 (4th Cir. 1986) and *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995)]. However, in *Smith*, the Fourth Circuit merely stated that "a non-examining physician's opinion cannot, by itself, serve as substantial evidence supporting a *denial of disability benefits when it is contradicted by all other evidence in the record*." 795 F.2d at 345 (emphasis added). In addition, in *Lester*, the Ninth Circuit merely stated that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." 81 F.3d at 831 (emphasis in original). This Court notes that, in this case, there is no competing evidence regarding the plaintiff's mental health between treating or examining physicians and non-treating or non-examining physicians.

examination of the plaintiff. Accordingly, this Court hereby **OVERRULES** the plaintiff's Objections regarding the claim that the ALJ failed to fully develop the record. For these reasons and those more fully stated in the magistrate judge's R&R, this Court finds that ALJ developed a reasonably complete record" and that the plaintiff received a full and fair hearing. *See* **Clark v. Shalala**, 28 F.3d 828, 830-31 (8th Cir. 1994) (cited with approval by **Rice v. Charter**, 1995 WL 253134, *2 (4th Cir. May 1, 1995) and **Bell v. Charter**, 1995 WL 347142, *4 (4th Cir. June 9, 1995)); *see also* **Stahl v. Comm'r of Soc. Sec. Admin.**, 2008 WL 2565895, *5 (N.D.W.Va. June 26, 2008) (citing **Sims v. Harris**, 631 F.2d 26, 27 (4th Cir. 1980)).

### B. Treating Source Evidence

The plaintiff argues in her Motion for Summary Judgment that the ALJ improperly discredited treating source evidence from Belington Community Medical Services [Doc. 11 at 8-9]. The magistrate judge concludes in his R&R that "there is substantial evidence to support the ALJ's conclusion to not afford the treating source evidence and opinion controlling weight" [Doc. 15 at 17]. In her Objections, the plaintiff argues that some of the records discounted by the ALJ were actually filled out by the West Virginia Department of Health and Human Resources ("DHHR"), not Belington Community Medical Services [Doc. 16 at 10-11]. The plaintiff further argues that, even if the records were prepared by Belington Community Medical Services, the ALJ still improperly discounted a treating source [*Id.* at 12-13].

In evaluating the opinions of treating sources, an ALJ must generally give more weight to the opinion of a treating physician because the physician is most able to provide

"a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(c)(2). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) [the opinion] is supported by clinical and laboratory diagnostic techniques and (2) [the opinion] is not inconsistent with other substantial evidence." *Ward v. Chater*, 924 F.Supp. 53, 55 (W.D. Va. 1996); *see also* 20 C.F.R. § 404.1527(c)(2) and 20 C.F.R. § 416.927(c)(2). As such, the ALJ is not required to give controlling weight to a treating source where the ALJ finds that the physician's opinion is inconsistent with other substantial evidence. *See Ward*, 924 F.Supp. at 55; 20 C.F.R. § 404.1527(c)(2); and 20 C.F.R. § 416.927(c)(2); *see also Johnson v. Barnhart*, 434 F.3d 650, 654 at n.5 (4th Cir. 2005) ("[T]he ALJ holds [the] discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence.") (internal citations omitted); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (If a treating physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.").

If the ALJ determines that a treating physician's opinion should not be accorded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. § 404.1527(c)(1)-(6). These factors include: (a) examining relationship, (b) treatment relationship, (c) length of the treatment relationship and frequency of examination, (d) nature and extent of the treatment relationship, (e) supportability of the opinion, (f) consistency between the opinion and the record as a whole, (g) whether the treatment source is opining within his or her specialization, and (h) any other factors that tend to support or contradict the opinion. 20

C.F.R. § 404.1527(c)(1)-(6). In addition, the regulations state that the Commissioner "will always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion." 20 C.F.R. § 404.1527(c)(2). In this regard, Social Security Ruling 96-2p provides that such decisions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Social Security Ruling 96-2p, 1996 WL 374188, *5 (July 2, 1996).

ALJ La Vicka noted that he was not affording much weight to the records from Belington Community Medical Services[8] because the "records are fraught with highly questionable conclusions based primarily on the claimant's subjective complaints and no medically objective standards" [R. 14]. ALJ La Vicka further stated the following:

> The records of Belington Medical Clinic, as a whole, are inconsistent with the credible medical evidence established in this matter. There is no evidence that the claimant was experiencing the degree of symptoms, particularly given the findings from the claimant's [physical] consultative examination on March 24, 2010, and certainly no basis in fact or in any clinical/laboratory finding to justify the conclusion of Dr. Jeffrey Harris or Karen Spotle, PAC, that the claimant is simply unable to work. This unsubstantiated conclusion is particularly concerning based on the fact that the practitioners at Belington seemed to find otherwise in completing paperwork for the claimant to renew her commercial driver's license (CDL) in January 2009. Specifically, the credibility of the practitioners and the claimant are called into serious doubt in what has been marked as Exhibit 2F

---

[8]This Court notes the plaintiff argument that some of the records discounted by the ALJ were actually filled out by the DHHR, not Belington Community Medical Services. As noted by the magistrate judge in his R&R, the forms appear to be standard referral sheets to be filled out by a treating physician and returned to the DHHR [Doc. 15 at 15 n.1]. However, regardless of who prepared the forms, the ALJ determined that the conclusions reached in the forms would not be afforded controlling weight because those conclusions were not supported by clinical and laboratory diagnostic techniques and were inconsistent with other substantial evidence. As such, because the ALJ's determination was based upon the conclusions reached in the form, it does not matter who authored these forms.

which contains a "West Virginia Department of Health and Human Resources Medical Review Team: General Physical (Adults)" form completed by Belington, progress notes from a few office visits and a "Medical Examination Report for Commercial Driver Fitness Determination."

Exhibit 2F (pages 5-8), contains the "Medical Examination Report for Commercial Driver Fitness Determination" filled out in part by the claimant herself and in part by Karen Spotle, PAC, of Belington, on January 13, 2009. In the "Health History" section that was completed by the claimant and which the Federal Motor Carrier Safety Administration encourages discussion between the claimant and the medical practitioner, the claimant reports no spinal injury or disease and no chronic law back pain. Both of these statements stand in stark contrast to the claimant's complaints made elsewhere throughout the record, including statements she made to Belington medical practitioners at other times who apparently voiced no reservations or objections to completing and signing off on the forms despite their knowledge that statements made by the claimant were arguably false. In furtherance of obtaining the claimant a renewal of her CDL, Karen Spotle, PAC, also failed to acknowledge the claimant's long-standing history of degenerative disc disease including cervical and lumbar surgery in the form of diskectomies with fusion. When asked on the form if the claimant had any "[p]revious surgery, deformity, limitation of motion, tenderness" of the "Spine, other musculoskeletal" body system, Ms. Spotle answered "NO" thereby certifying that the claimant had no such conditions and was otherwise healthy enough to operate a commercial motor vehicle. For all of the aforementioned reasons, little weight is afforded to the medical diagnoses, findings and/or opinions of Belington Community Medical Services (Belington). In further support of this finding, State agency consultant Dr. Fulvio Franyutti, M.D., reviewed all of the medical evidence in this matter including the records of Belington. In his expert opinion, based on his education, training and experience along with a thorough review of the record, Dr. Franyutti found the statement by Belington that the claimant is "unable to work for a year" unsupported by the objective medical evidence. (Exhibit 7F).

[R.14].

ALJ La Vicka then proceeded to review the other evidence in the record [R. 15-16]. As noted by ALJ La Vicka, he found that medical evidence from Belington Community Medical Services (1) was not supported by clinical and laboratory diagnostic techniques and (2) was inconsistent with other substantial evidence. As such, the ALJ properly used his discretion to give less than controlling weight to this evidence in light of persuasive

evidence contrary to the treating physician's foundation for his conclusion. *See **Johnson***

***v. Barnhart***, 434 F.3d 650, 654 at n.5 (4th Cir. 2005); *see also **Ward v. Chater***, 924

F.Supp. 53, 55 (W.D. Va. 1996); *see also* 20 C.F.R. § 404.1527(c)(2) and 20 C.F.R.

§ 416.927(c)(2). Furthermore, the ALJ considered the factors in 20 C.F.R.

§ 404.1527(c)(1)-(6) and provided reasons for weight given to the opinions contained in the

records from Belington Medical Community Services pursuant to Social Security Ruling 96-

2p [R. 11-16]. Accordingly, this Court hereby **OVERRULES** the plaintiff's Objections on this

issue. For these reasons and those more fully stated in the magistrate judge's R&R, this

Court finds that the ALJ's decision to give less than controlling weight to the records from

Belington Community Medical Services was not a reversible error and was supported by

substantial evidence.

## C. RFC

The plaintiff argues in her Motion for Summary Judgment that the RFC was

inconsistent with the overall medical records [Doc. 11 at 12-15]. The magistrate judge

concludes in his R&R that the ALJ "reviewed the entire record, both medical and non-

medical evidence, as he is required to do" in reaching the RFC conclusion [Doc. 15 at 18].[9]

In her Objections, the plaintiff argues that "the ALJ's RFC was based on a hodgepodge of

---

[9]In addition, the magistrate judge notes that the plaintiff argues in a footnote in her Motion for Summary Judgment that the hypothetical provided to the vocational expert was flawed because it was based upon an RFC that is not supported by substantial evidence [Doc. 15 at 18]. The magistrate judge finds this argument without merit because he concludes that the RFC is indeed supported by substantial evidence [*Id.*]. The plaintiff made no objection to the magistrate judge's conclusion regarding the hypothetical posed to the vocational expert [*See* Doc. 16]. Upon a review of the R&R and a finding that RFC is supported by substantial evidence, this Court finds no clear error with the magistrate judge's conclusion on this issue.

evidence that the ALJ arbitrarily disregarded, arbitrarily ignored, and arbitrarily credited" [Doc. 16 at 13].

A claimant's RFC "is the most [the claimant] can do despite [his or her] limitations." 20 C.F.R. § 404.1545 (a)(1). The ALJ is responsible for assessing the claimant's RFC. 20 C.F.R. § 404.1546(a). The ALJ is "not required to obtain an expert medical opinion" in assessing a claimant's RFC. *Felton-Miller v. Astrue*, 459 Fed.Appx. 226, 231 (4th Cir. 2011). The ALJ bases the RFC assessment on all relevant medical and other evidence in the record, including the "[claimant's] subjective complaints, the objective medical evidence, and the opinions of treating, examining, and non-examining physicians." *Id.*; *see also* 20 C.F.R. § 404.1520(e).

In her Objections, the plaintiff argues that the ALJ did not properly consider the claimant's subjective complaints, the objective medical evidence, or various medical sources in reaching the RFC conclusion [Doc. 16 at 13-14]; the plaintiff also claims that the ALJ improperly formed the RFC based on his own beliefs regarding what the plaintiff can do [*Id.* at 14-15]. This Court first notes that the ALJ's discussion of the evidence that he considered in reaching his RFC conclusion exceeds five pages of the ALJ's eleven-page written decision [R. 11-16]. In this discussion, the ALJ reviews in detail all the evidence that he considered, including the plaintiff's subjective complaints and the objective medical evidence, in great detail [*Id.*]. Although the plaintiff disagrees with the weight assigned to certain evidence [Doc. 16 at 13-14], this does not mean that the ALJ failed to consider evidence that it assigned less weight. Accordingly, this Court hereby **OVERRULES** the plaintiff's Objections on this issue. For these reasons and those more fully stated in the

magistrate judge's R&R, this Court finds that the ALJ's RFC is supported by substantial evidence.

## IV. Conclusion

Upon careful consideration, it is the opinion of this Court that the magistrate judge's Report and Recommendation **[Doc. 15]** should be, and hereby is, **ADOPTED**. Further, the plaintiff's Objections **[Doc. 16]** are **OVERRULED**. Therefore, this Court **ORDERS** that the defendant's Motion for Summary Judgment **[Doc. 12]** is hereby **GRANTED** and the plaintiff's Motion for Summary Judgment **[Doc. 10]** is hereby **DENIED**. Accordingly, this Court hereby **DENIES** and **DISMISSES** the plaintiff's Complaint **[Doc. 1]** and **ORDERS** that this matter be **STRICKEN** from the active docket of this Court. The Clerk is directed to enter a separate judgment in favor of the defendant.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: April 29, 2013.

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE